Stewart P. SPARKS, III, on behalf of himself and others similarly situated, Plaintiff,

v.

CULLMAN ELECTRIC COOPERATIVE, Defendant.

Tammy Bates on behalf of herself and others similarly situated, Plaintiff,

v.

Joe Wheeler Electric Membership Corporation, Defendant.

John Lake on behalf of himself and others similarly situated, Plaintiff,

v.

Marshall–Dekalb Electric Cooperative, Defendant.

Herman Kritner, Jr., on behalf of himself and others similarly situated, Plaintiff,

v.

Arab Electric Cooperative, Defendant.

Thomas Malone, on behalf of himself and others similarly situated, Plaintiff,

v.

Franklin Electric Cooperative, Defendant.

John Hollis Neyman, on behalf of himself and others similarly situated, Plaintiff,

v.

Cherokee Electric Cooperative, Defendant.

Case No. 5:15–cv–322–MHH, Case No. 5:15–cv–334–MHH, Case No. 4:15–cv–339–MHH, Case No. 4:15–cv–341–MHH, Case No. 3:15–cv–387–MHH, Case No. 4:15–cv–586–MHH

United States District Court, N.D. Alabama, Northeastern Division.

Signed March 25, 2016

Andrew Phillip Campbell, Andrew T. Campbell, John C. Guin, Stephen D. Wadsworth, Campbell Guin Williams Guy and Gidiere LLC, John Parker Yates, Thomas E. Baddley, Jr., Baddley & Mauro LLC, Birmingham, AL, Justin G. Williams, Campbell Guin, LLC, Tuscaloosa, AL, for Plaintiff.

The Estate of George Steward, pro se.

C. Crews Townsend, Carlos C. Smith, Kyle J. Wilson, Larry L. Cash, Travis R. Thompson, Miller Martin LLC, Chattanooga, TN, Timothy P. Culpepper, Culpepper & Turner LLC, Cullman, AL, Edwin W. Small, Maria Victoria Gillen, Tennessee Valley Authority, Knoxville, TN, for Defendant.

## MEMORANDUM OPINION AND ORDER

MADELINE HUGHES HAIKALA, UNITED STATES DISTRICT JUDGE

The plaintiffs in these consolidated putative class actions allege that the defendant electric cooperatives must distribute excess revenue in the form of either refunds or rate reductions pursuant to Alabama Code § 37-6-20. Each electric coopera-tive has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and in each case, intervenor Tennessee Valley Authority has filed a memorandum of law in support of dismissal. The electric cooperatives and the TVA assert that federal law preempts the plaintiffs' Alabama law claims. The electric cooperatives also argue that the plaintiffs have not complied with the required procedures to assert their derivative claims. This memorandum opinion and order addresses the motions to dismiss filed in these cases.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Complaints Against the Electric Cooperatives [1]

The plaintiffs in these consolidated putative class action suits are members of different rural electric cooperatives organized under Alabama Code § 37-6-1. (Doc. 1-1, ¶ 8).[2] The plaintiffs assert that Alabama Code § 37-6-20 "mandates that cooperatives such as Defendant[s] distribute certain excess revenue to their members 'either as patronage refunds prorated in accordance with the patronage of the cooperative by the respective members paid for during such fiscal year or by way of general rate reductions, or by combination of such methods.'" (Doc. 1-1, ¶ 2) (emphasis omitted). The defendant electric cooperatives have earned excess revenues. (Doc. 1-1, ¶ 13).[3] "Despite [the] explicit statutory mandate," the plaintiffs

---

1. In these consolidated cases, the parties' filings—including the complaints and the motions to dismiss—are identical in all relevant respects. For ease and clarity, the Court will limit its citations to the filings in the lead case, *Sparks v. Cullman Electric Cooperative* (15–322), except when citing to each individual case lends additional clarity to this opinion.

2. Plaintiffs Stewart Sparks, III, Tammy Bates, John Lake, and Herman Kritner, Jr. are consumers who are members of the Cullman Electric Cooperative, the Joe Wheeler Electric Membership Corporation, the Marshall–De-Kalb Electric Cooperative, and the Arab Electric Cooperative, respectively.

3. Mr. Sparks alleges that the Cullman Electric Cooperative "has amassed a fund of Patronage Capital exceeding $91,661,131 as of June 30, 2014" (Doc. 1-1, p. 6, ¶ 15, in case 15–322); Ms. Bates alleges that the Joe Wheeler Electric Membership Corporation "has amassed a fund of Patronage Capital exceeding $82,000,000 as of June 30, 2014" (Doc. 1-1, p. 7, ¶ 15, in case 15334); Mr. Lake alleges that the Marshall–DeKalb Electric Cooperative has "amassed a fund of Pa-

add, the electric cooperatives have "failed, and continue[ ] to fail, to make appropriate annual refunds and/or rate reductions." (Doc. 1–1, ¶ 3).

In January 2015, Mr. Sparks, Ms. Bates, Mr. Lake, and Mr. Kritner each filed class action complaints in Alabama state court against their respective electric cooperatives. (See Doc. 1–1 in case 15–322; Doc. 1–1 in case 15–334; Doc. 1–1 in case 15–339; Doc. 1–1 in case 15–341). The plaintiffs seek declaratory, injunctive, and equitable relief on the grounds that the defendants' refusal to distribute excess revenue in the form of either refunds and/or rate reductions violates Alabama Code § 37–6–20. (Doc. 1–1, ¶ 28–30). Each plaintiff's complaint also asserts claims for breach of contract, unjust enrichment, and an accounting.[4] The electric cooperatives removed each case to federal court, and the Tennessee Valley Authority ("TVA") intervened as a matter of right in each case.

## B. The Relationship Between the Electric Cooperatives and the TVA

Each electric cooperative receives electric power from the TVA and distributes electricity to the cooperative's members. The TVA—a federal agency established by the TVA Act, see 16 U.S.C. § 831 et seq.— sells power to electric cooperatives and other entities throughout the Tennessee Valley. The TVA Act provides the TVA's Board of Directors with the authority to sell surplus power to "States, counties, municipalities, corporations, partnerships, or individuals." 16 U.S.C. § 831i. "[T]o carry out said authority, the Board is authorized to enter into contracts for such sale...." Id. "[T]he Board is authorized to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purposes of this [Act]." Id.

Each electric cooperative entered into a "power contract" with the TVA to resell the TVA's electricity to the electric cooperative's members.[5] Among other things, the TVA's power contracts place restrictions on the electric cooperatives' "resale rates"—the rates that the electric coopera-

---

tronage Capital exceeding $42 million" (Doc. 1–1, p. 7, ¶ 15, in case 15–339); and Mr. Kritner alleges that the Arab Electric Cooperative "has amassed a fund of Patronage Capital exceeding $32,000,000 as of June 30, 2013" (Doc. 1–1, p. 6, ¶ 15, in case 15–341).

4. As to the breach of contract claims, the plaintiffs contend that by violating Alabama Code § 376–20, the electric cooperatives have breached their contracts with the plaintiffs, which incorporate the statutory obligations of Alabama Code § 37–6–1, et seq. (Doc. 1–1, ¶ 31–36). As to the unjust enrichment claims, the plaintiffs contend that the electric cooperatives have wrongfully withheld from the plaintiffs and the putative class members excess revenue that the electric cooperatives should have distributed in accordance with Alabama Code § 37–6–20. (Doc. 1–1, ¶ 37–39). As to the claims for an accounting, the plaintiffs request an accounting to determine the proper amount that the electric cooperatives owe to each plaintiff. (Doc. 1–1, ¶ 4041).

5. Because the pertinent portions of each electric cooperative's power contract with the TVA are identical, the Court will cite only to the power contract between the Cullman Electric Cooperative and the TVA for the remainder of this opinion.

Doc. 1–4 contains a copy of the relevant portions of the TVA contract. Although the plaintiffs do not cite to or mention the TVA power contracts in their complaints, the Court takes judicial notice of the contracts because they are public records (i.e., records of the TVA, a federal agency). See Horne v. Potter, 392 Fed.Appx. 800, 802 (11th Cir. 2010) ("A district court may take judicial notice of certain facts under Federal Rule of Evidence 201(b) without converting a motion to dismiss into a motion for summary judgment."); Universal Express, Inc. v. U.S. S.E.C., 177 Fed.Appx. 52, 53 (11th Cir.2006) ("Public records are among the permissible facts that a district court may consider."); Odion v. Google, Inc., 628 Fed.Appx. 635, 638 (11th Cir.2015); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir.1999) (noting that a

tives charge when distributing power to their respective customers. *(See* Doc. 1–4, ¶ 5(b)–(c)). The contracts provide that the cooperatives' resale rates must conform to the TVA's "Schedule of Rates and Charges," and the electric cooperatives cannot adjust their rates without the agreement of the TVA. *(See* Doc. 1–4, ¶¶ 5(b)–(c), 6).

Multiple provisions of the contracts establish that electric cooperatives cannot revise their rates unilaterally and explain that the TVA, when setting rates, considers not only the needs of the cooperative with which it is negotiating but also the demands of all of the customers that the TVA serves. For example, paragraph 2(f) states:

> Notwithstanding any other provision of this section, TVA may, as a condition precedent to TVA's obligation to make power available, require Cooperative to provide such assurances of revenue to TVA as in TVA's judgment may be necessary to justify the reservation, alteration, or installation by TVA of additional generation, transmission, or transformation facilities for the purpose of supplying power to Cooperative.

(Doc. 1–4, p. 4). Paragraph 5(b) provides: "If the rates and charges in effect at any time provide revenues that are more than sufficient ..., the parties shall *agree* upon a reduction in said rates and charges[ ]...." (Doc. 1–4, ¶ 5(b)) (emphasis added). Additionally, paragraph 6 states:

> All ... surplus revenues ... may be used for new electric system construc-

tion or the retirement of System Indebtedness prior to maturity; provided, however, that resale rates and charges shall be reduced from time to time to the lowest practicable levels considering such factors as future circumstances affecting the probable level of earnings, the need or desirability of financing a reasonable share of new construction from such surplus revenues, and fluctuations in debt service requirements.

(Doc. 1–4, ¶ 6).

Each power contract incorporates a "Schedule of Terms and Conditions," which controls how and when the electric cooperative may adjust resale rates. (Doc. 1–4, pp. 12–13). Paragraph 6 of the Schedule of Terms and Conditions provides in part: "The wholesale rates and resale rates provided in sections 4 and 5 of the contract shall be subject to adjustment and change from time to time in accordance with this section in order to assure TVA's ability to continue to supply the power requirements of [the] Cooperative[s] and TVA's other customers on a financially sound basis with due regard for the primary objectives of the TVA Act[ ]...." (Doc. 1–4, p. 12). The Schedule of Terms and Conditions also gives the TVA ultimate authority to set rates when the parties are unable to agree to a change so that the TVA may "carry out the objectives of the TVA Act ..." (Doc. 1–4, p. 13).

On this record, the Court evaluates the preemption arguments in the defendants' motions to dismiss.[6]

district court may take judicial notice at the dismissal stage of public documents filed with the Securities and Exchange Commission); *id.* at 1280 ("Several courts have ... expressly reviewed matters of public record in ruling on motions to dismiss and have expressly relied on the information contained in those records as a basis for their rulings." (citing

cases)). Moreover, the power contracts are part of the Court's own record, as the contracts formed the basis of the Court's subject matter jurisdiction over these cases. *(See* Doc. 38).

6. Before these cases were consolidated, Judge Virginia Hopkins entered orders setting briefing deadlines for dispositive motions in *Lake*

## II. DISCUSSION

■ ▪The parties do not dispute that the plain language of Alabama Code § 37–620 directs the electric cooperatives to provide excess revenues to the cooperatives' members by way of rate reductions, refunds, or some combination of the two. The electric cooperatives and the TVA argue that federal law preempts Alabama Code § 37–6–20. Specifically, the electric cooperatives and the TVA assert that both Congress' broad grant of power to the TVA under the TVA Act and the restrictions in the power contracts prevent the cooperatives from unilaterally reducing rates or issuing refund payments per Alabama Code § 37–6–20, such that federal law—the TVA Act—conflicts with and therefore preempts the state statute. Throughout this litigation, the plaintiffs have argued that federal law does not preempt Alabama Code § 37–6–20 because the conditions in the power contracts are consistent with § 37–6–20. (*See, e.g.,* Doc. 18, p. 7).

▪ ■ Conflict preemption occurs in two situations: "[1] where it is impossible for a private party to comply with both state and federal requirements or [2] where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 486 (11th Cir.2015) (internal quotation marks and citation omitted). Here, though only one situation would be sufficient to trigger preemption, both situations exist.

■ "The TVA Act authorizes the TVA to enter into contracts to sell its surplus power, and the Act provides that: 'the Board is authorized to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purpose of this chapter.'" *See McCarthy v. Middle Tenn. Elec. Membership Corp.,* 466 F.3d 399, 406 (6th Cir.2006) (quoting 16 U.S.C. § 831i). Pursuant to this authority, the power contracts in these cases prevent the electric cooperatives from making unilateral resale rate determinations. (*See, e.g.,* Doc. 1–4, ¶¶ 5(b)–(c), 6). Under their contracts with the TVA, the cooperatives can adjust rates only with the TVA's agreement, and when the cooperatives and the TVA disagree, the TVA may set rates unilaterally. (Doc. 1–4, p. 13, "Schedule of Terms and Conditions," "Change" provision). The electric cooperatives cannot independently reduce rates or issue refunds under Alabama Code § 37–6–20 and simultaneously comply with the TVA's contractual limitation on each electric cooperative's ability to adjust rates. The conflict is insurmountable.[7] For this reason alone,

*v. Marshall–DeKalb Electric Cooperative* and *Kritner v. Arab Electric Cooperative.* (*See* Doc. 2 in 15–339; Doc. 3 in 15–341). After the defendants filed their motions to dismiss in each case, neither Mr. Lake nor Mr. Kritner filed a response brief within Judge Hopkins's briefing deadlines. Additionally, after consolidation and after the Court ruled on the plaintiffs' motions to remand, the Court set a deadline in each case for the plaintiffs' response briefs in opposition to the defendants' motions to dismiss. (*See, e.g.,* Doc. 44 in 15–322). Before this deadline expired, the plaintiffs asked the Court to extend their response deadline from March 19, 2016 to March 21, 2016. "For good cause shown, the court ...

allow[ed] the plaintiffs until ... March 21, 2016 to file a response to the pending motions to dismiss in these cases." (Doc. 46). To date, the plaintiffs have not submitted a response brief in opposition to the defendants' motions to dismiss.

7. To the extent that one might argue that the power contracts are silent as to the cooperatives' abilities to issue refunds, the Court finds that there is no meaningful distinction between a rate reduction and a refund. *See United States v. Pickwick Electric Membership Corp.,* 158 F.2d 272, 277 (6th Cir.1946) ("Patronage refunds are in substance an indirect form of reduced rates.").

the TVA Act preempts the plaintiffs' state law claims.

▮▮▮ But there is more. Congress has authorized the TVA to distribute federal property in the form of electricity to all of the cooperatives with which the TVA contracts, not just the electric cooperative defendants in these cases. Congress requires the TVA to manage the electricity that the TVA distributes across the expansive Tennessee Valley region so as to ensure that millions of private citizens and commercial entities have enough electricity to operate efficiently. *See generally Mobil Oil Corp. v. Tenn. Val. Auth.*, 387 F.Supp. 498, 503 (N.D.Ala.1974) ("TVA supplies power in an area covering portions of seven states and containing 80,000 square miles and about 6,000,000 people. TVA's customers include ... 160 distributors, consisting primarily of municipal and cooperative systems, which purchase power for resale[ ] ...."). The power contracts state that "[t]he wholesale rates and resale rates provided in sections 4 and 5 of the contract shall be subject to adjustment and change from time to time in accordance with this section in order to assure TVA's ability to continue to supply the power requirements of [the] Cooperative[s] and TVA's other customers on a financially sound basis with due regard for the primary objectives of the TVA Act[ ] ...." (Doc. 1–4, p. 12).

Requiring the electric cooperatives to reduce rates or issue refunds without first allowing the TVA to consider the impact that such a mandate would have on the power supply of the entire Tennessee Valley region would stand as an obstacle to the TVA's accomplishment of Congress'

objectives. For this additional reason, the TVA Act preempts Alabama law. *See Murphy v. Dulay*, 768 F.3d 1360, 1367 (11th Cir.2014) ("[A] federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.") (internal quotation marks and citations omitted); *McCarthy*, 466 F.3d at 407 ("To the extent that [state] law imposes additional constraints on the TVA's authority, it is preempted by the TVA Act's express grant of discretion....").

Because each of the plaintiffs' common law claims rests on the cooperatives' purported violation of Alabama Code § 37–6–20, the Court's preemption analysis applies with equal force to the plaintiffs' claims for breach of contract, unjust enrichment, and an accounting.[8]

## IV. CONCLUSION

For the reasons stated above, the Court finds that the TVA Act preempts Alabama Code § 37–6–20. The defendant electric cooperatives' power contracts dictate the manner in which the TVA and the cooperatives set rates. Therefore, the Court grants the defendants' motions to dismiss and dismisses with prejudice all of the plaintiffs' claims against the electric cooperatives in these consolidated cases. The Court asks the Clerk to please close the file for each consolidated case.

**DONE** and **ORDERED** this March 25, 2016.

---

8. Because the Court finds that the plaintiffs' claims are preempted, the Court does not consider the electric cooperatives' alternative argument that the plaintiffs have not complied with the procedures necessary to assert their derivative claims. The Court notes that there are administrative procedures that co-operative members may use to seek a rate reduction. It is unlikely that the plaintiffs could proceed with a lawsuit seeking a rate reduction unless they were able to demonstrate that they exhausted the administrative remedies available to them.